IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
2010 DEC 10 DB
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

| TRACIE M. TRUTH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| versus | ) | Civil No. 3 10 1165 |
| ERIC ESKIOGLU, M.D., | ) | |
| Defendant. | ) | |

## COMPLAINT

Tracie M. Truth, for cause of action against Defendant, states:

1. Ms. Truth is a citizen and resident of Nashville, Davidson County, Tennessee.

2. Defendant Eskioglu is a citizen and resident of Florida. He may be served with process at 9981 S. Healthpark Drive, #401, Ft. Meyers, Florida 33908.

3. This Court has diversity jurisdiction over this matter as the parties reside in different states and the amount in controversy greatly exceeds $75,000.00.

4. Any conditions precedent to bringing this action have been met or waived.

5. Ms. Truth timely brought an action against Defendant Eskioglu in the Circuit Court for Davidson County, Tennessee. That case was dismissed without prejudice to re-filing on September 25, 2009.

### The Facts

6. Defendant Eskioglu was working at Vanderbilt University Medical Center in 2006.

7. Defendant Eskioglu examined Ms. Truth because she had back pain.

8. Defendant Eskioglu ultimately recommended and convinced Ms. Truth to undergo spine surgery.

9. Before the scheduled date of the surgery, Ms. Truth notified Defendant Eskioglu that she was afraid to have the surgery and the scheduled surgery was cancelled at her request.

10. Defendant Eskioglu knew of and understood Ms. Truth's fear of spine surgery.

11. Defendant Eskioglu represented to Ms. Truth, in an effort to reduce her stress about the surgery, that he had successfully performed more than a hundred of the procedures he was recommending to her.

12. Ms. Truth relied on the representations of Defendant Eskioglu in deciding to go forward with the surgery recommended by Defendant Eskioglu.

13. Defendant Eskioglu, upon information and belief, had NOT performed more than a hundred procedures like the procedure he recommended to Ms. Truth despite his claims that he had done so.

14. Because Ms. Truth trusted and believed Defendant Eskioglu, she decided to go forward with the surgery he recommended. The surgery was scheduled for and performed on February 3, 2006.

15. Defendant Eskioglu tried to place screws in the pedicles of Ms. Truth's spine during the surgical procedure.

16. Defendant Eskioglu failed to properly place the screws.

17. The screws were supposed to be placed within the pedicles of Ms. Truth's spine.

18. Defendant Eskioglu drove one of the screws through the pedicle on the inside (medially) near a nerve root.

19. Defendant Eskioglu drove another screw through the pedicle and he drove it all the way into a lumbosacral disc.

20. The outer third (1/3) of the anulus (the outer portion of lumbosacral disc) contains nerves that send pain signals to the brain.

21. After surgery, Ms. Truth had new and increased pain. She told Defendant Eskioglu about the new and increased pain.

22. Because the pain continued, a CT scan of Ms. Truth's lumbar spine was ordered six (6) days after surgery was performed by Defendant Eskioglu.

23. The CT scan showed Defendant Eskioglu had misplaced the screws.

24. Defendant Eskioglu had a duty to tell Ms. Truth about the fact that he had misplaced the pedicle screws.

25. Defendant Eskioglu chose to hide this important information from Ms. Truth.

26. Because Ms. Truth continued to have the new and increased pain, a MR scan was performed on February 28, 2006.

27. The MR scan clearly showed that Defendant Eskioglu had driven two (2) screws through the pedicles of Ms. Truth's spine.

28. Defendant Eskioglu again had a duty to tell Ms. Truth about the fact that he had misplaced the pedicle screws.

29. Defendant Eskioglu again chose to hide this important information from Ms. Truth.

30. When Ms. Truth continued to have increased pain and received no answers from Defendant Eskioglu, she sought answers from another doctor.

31. It was only when Ms. Truth went to another doctor that she learned the source of her new and increased pain – Defendant Eskioglu had driven the screws through her pedicles.

32. Ms. Truth filed suit against Defendant Eskioglu within one year of discovering the

truth about the fact that Defendant Eskioglu had committed malpractice and had hid this fact from Ms. Truth.

## COUNT 1 – INTENTIONAL MISREPRESENTATION

33. Defendant Eskioglu knowingly and intentionally misrepresented to Ms. Truth that he obtained performed more than 100 successful operations like the operation he was recommending for Ms. Truth.

34. In truth, Defendant Eskioglu had performed far less than the number of the specific surgeries he represented he had performed.

35. Defendant Eskioglu knew the representation he made regarding the number of the specific surgeries he had performed to be false at the time he made the representation to Ms. Truth.

36. Mr. Truth relied on the representations of Defendant Eskioglu when she agreed to go forward with the recommended surgery.

37. Ms. Truth was unaware that Defendant Eskioglu's representations were false.

38. IF Ms. Truth had known and understood the truth about Defendant Eskioglu's lack of experience, she would have never agreed to allow him to operate on her spine.

39. Unfortunately, because Defendant Eskioglu misrepresented his experience, Ms. Truth went forward with the surgery.

40. But for Defendant Eskioglu's material misrepresentation, Ms. Truth would have avoided the injuries caused by Defendant Eskioglu.

41. Further, Defendant Eskioglu represented to Ms. Truth that he had placed the pedicle screws in "excellent" position.

42. In truth, two of the pedicle screws were placed outside the pedicles in positions

4

harmful to Ms. Truth.

43. Though Defendant Eskioglu had a duty to inform Ms. Truth of the misplaced screws, he secreted this information from her.

44. As a direct and proximate result of Defendant Eskioglu's intentional misrepresentations, Ms. Truth sustained significant harm for which Defendant Eskioglu is liable.

## COUNT 2 – LACK OF INFORMED CONSENT

45. Defendant Eskioglu led Ms. Truth to believe he had extensive experience in performing surgeries on patients like Ms. Truth, claiming more than 100 similar procedures.

46. Ms. Truth was entitled to know the truth about Defendant Eskioglu's surgical experience.

47. Ms. Truth reasonably relied on the information Defendant Eskioglu provided when she agreed to allow him to operate on her.

48. IF Ms. Truth had known the true facts about Defendant Eskioglu's lack of experience, she would have never agreed to allow him to operate on her.

49. It was impossible for Ms. Truth to give informed consent in light of the false claims made by Defendant Eskioglu.

50. As a direct and proximate result of Defendant Eskioglu's failure to obtain informed consent, Ms. Truth sustained significant harm for which Defendant Eskioglu is liable.

## COUNT 3 – NEGLIGENCE AND GROSS NEGLIGENCE

51. Defendant Eskioglu, under the recognized acceptable standard of professional practice for spine surgeons in Nashville, Tennessee in 2006 ("standard of care"), was required to place the screws within the pedicles of Ms. Truth's spine.

5

52. Under the standard of care, when Defendant Eskioglu failed to properly place the screws, he had a duty to recognize his failures to properly place the screws and to deal with the problems he created in a timely manner.

53. Defendant Eskioglu breached the standard of care when he placed the screws in positions to cause harm to Ms. Truth, when he failed to timely address the problems he created, and when he chose to secret this problem from Ms. Truth.

54. Defendant Eskioglu misplaced one of the screws so badly that he drove it directly into a lumbosacral disc, causing unrelenting pain to Ms. Truth.

55. Despite the obvious problem as shown on the post-surgical imaging, Defendant Eskioglu chose to hide this important information from Ms. Truth.

56. This decision constitutes gross negligence of the highest degree.

57. The decision to hide the problem from Ms. Truth forced her to endure additional pain and to needlessly suffer through months of unrelenting pain.

58. The delay created by Defendant Eskioglu's decision to hide the truth has also complicated Ms. Truth's medical condition and her options for treatment.

59. As a direct and proximate result of Defendant Eskioglu's negligence and gross negligence, Ms. Truth sustained significant harm for which Defendant Eskioglu is liable.

## **PUNITIVE DAMAGES**

60. Defendant Eskioglu knowingly and intentionally withheld important facts about Ms. Truth's medical condition from her.

61. As a direct result, Ms. Truth was needlessly forced to endure unrelenting pain.

62. Defendant Eskioglu's conduct was such that it should not be tolerated in a civilized

6

Case 3:10-cv-01165   Document 1   Filed 12/10/10   Page 6 of 7 PageID #: 6

society.

63. Defendant Eskioglu's conduct was such that it mandates punitive damages to deter such inappropriate conduct in the future by Defendant Eskioglu and others similarly situated.

WHEREFORE, Ms. Truth requests:

1. That process issue and be served on Defendant Eskioglu;

2. That judgment be entered against Defendant Eskioglu for general and special damages (past and future) in an amount not to exceed $5,000,000.00;

3. That judgment be entered against Defendant Eskioglu for punitive damages not to exceed $10,000,000.00;

4. That judgment be entered against Defendant Eskioglu for all costs, including discretionary costs; and

5. Such further and additional relief to which the Court deems Ms. Truth entitled.

Respectfully submitted,

**Law Offices of Barry E. Weathers, P.C.**

By: /s/ Barry E. Weathers

Barry E. Weathers (020322)
3017 Poston Avenue
Nashville, Tennessee 37203
(615) 256-2568 (telephone)
(615) 256-2514 (facsimile)

**Attorney for Tracie M. Truth**