IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRACIE M. TRUTH, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-1165 |
| ) | Judge Trauger |
| ERIC ESKIOGLU, M.D., ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion to Dismiss filed by the defendant (Docket No. 5), to which the plaintiff has filed a response (Docket No. 7), and in support of which the defendant has filed a reply (Docket No. 11). For the reasons discussed herein, the defendant's motion will be denied.

## BACKGROUND

The plaintiff, Tracie M. Truth, is suing the defendant, Dr. Eric Eskioglu, for medical malpractice.[1] On February 3, 2006, the defendant performed back surgery on the plaintiff at Vanderbilt University Medical Center ("Vanderbilt"), placing several pedicle screws into her spine. The defendant allegedly convinced her to undergo the procedure by falsely stating that he had successfully performed over 100 such surgeries.

The plaintiff alleges that the defendant placed the screws negligently, driving them

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiff's Complaint (Docket No. 1).

1

through the pedicles of her spine and causing her to suffer increased pain. She further alleges that the defendant hid his mistakes from her afterward by telling her that the screw placement was "excellent." (Docket No. 1 ¶ 41.) The plaintiff filed her Complaint in this court on December 10, 2010, asserting claims for negligence, lack of informed consent, and intentional misrepresentation.[2] The sole defendant is Dr. Eskioglu, who now lives in Florida and is no longer affiliated with Vanderbilt. (Docket No. 7, Ex. 1 ¶ 3.)

The defendant has filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12, arguing that the plaintiff failed to submit a "certificate of good faith" with her Complaint, as required by Tennessee law. (Docket No. 6 at 3-4.)

## ANALYSIS

**I.      Motion to Dismiss Standard**

The Federal Rules of Civil Procedure require plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v.*

---

[2] The Complaint states that the plaintiff previously filed suit in Tennessee state court and that the action was dismissed without prejudice. (Docket No. 1 ¶ 5.)

*Twombly*, 550 U.S. 544, 570 (2007)).

## II.    Relevant Statutory Provisions

Because this is a diversity action, the substantive law of Tennessee applies. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). In Tennessee, malpractice causes of action are governed by the Medical Malpractice Act (the "Act"), Tenn. Code Ann. §§ 29-26-115 to -122.[3] *See Miller v. Monroe County*, No. 3:09-CV-85, 2010 U.S. Dist. LEXIS 34496, at *12-13 (E.D. Tenn. Apr. 7, 2010) (holding that the Act's requirements apply in federal diversity actions and collecting relevant cases).

Section 121 of the Act provides that, before filing suit, plaintiffs must send a notice to prospective defendants. Specifically, "[a]ny person . . . asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint." Tenn. Code Ann. § 29-26-121(a)(1). The notice must include, among other things, "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."[4] *Id.* § 29-26-121(a)(2)(E).

That section further provides:

> All parties in an action covered by this section shall be entitled to obtain complete copies of the claimant's medical records from any

---

[3] Although the statute does not indicate that "Medical Malpractice Act" is an official title, both state and federal courts have used this name to refer to the statutory scheme. *E.g.*, *Estate of French v. Stratford House*, No. E2008-00539-SC-R11-CV, 2011 Tenn. LEXIS 9, at *6 (Tenn. Jan. 26, 2011); *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 637 (E.D. Tenn. 2010).

[4] "HIPAA" refers to the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*

3

> other provider receiving notice. A party shall provide a copy of
> the specified portions of the claimant's medical records as of the
> date of the receipt of a legally authorized written request for the
> records within thirty (30) days thereafter. The claimant complies
> with this requirement by providing the providers with the
> authorized HIPAA compliant medical authorization required to
> accompany the notice. The provider may comply with this section
> by . . . [m]ailing a copy of the requested portions of the records . . .
> to the individual requesting the records . . . .

*Id.* § 29-26-121(d)(1).

Section 122 requires a plaintiff to file a "certificate of good faith" with his or her complaint:

> In any medical malpractice action in which expert testimony is
> required . . . , the plaintiff or plaintiff's counsel shall file a
> certificate of good faith with the complaint. If the certificate is not
> filed with the complaint, the complaint shall be dismissed, as
> provided in subsection (c), absent a showing that the failure was
> due to the failure of the provider to timely provide copies of the
> claimant's records requested as provided in § 29-26-121 or
> demonstrated extraordinary cause.

*Id.* § 29-26-122(a). In the certificate, the plaintiff must state that he or she has consulted with a medical expert who has provided a written statement confirming that there is a good-faith basis for the plaintiff's action. *Id.* § 29-26-122(a)(1)-(2).

Finally, subsection (c) of section 122 provides:

> The failure of a plaintiff to file a certificate of good faith in
> compliance with this section shall, upon motion, make the action
> subject to dismissal with prejudice. . . . The court may, upon
> motion, grant an extension within which to file a certificate of
> good faith if the court determines that a health care provider who
> has medical records relevant to the issues in the case has failed to
> timely produce medical records upon timely request, or for other
> good cause shown.

4

*Id.* § 29-26-122(c).

### III. Application of the Medical Malpractice Act

Here, the plaintiff did not file a certificate of good faith with her initial Complaint. The defendant argues that, because of this, her claims should be dismissed with prejudice. (Docket No. 6 at 3-4.)

The plaintiff did, however, send the required pre-suit notice to the defendant before filing this action. According to the affidavit of the plaintiff's counsel, Barry Weathers, the notice stated, in relevant part:

> I am providing this notice and Ms. Truth has executed a HIPAA-[compliant] medical authorization permitting you to obtain complete medical records from Vanderbilt University Medical Center, where she was treated by you. If that entity will not accept this authorization for any reason, please contact us and we will use our best efforts to execute a form acceptable to them that will permit you to obtain complete medical records from that entity.

(Docket No. 7, Ex. 1 ¶ 3.)

The attached HIPAA authorization stated:

> All medical records obtained pursuant to this authorization by [medical care provider] shall be copied by their office and a Bates-numbered copy shall be furnished to my counsel . . . within five (5) days after the records are obtained through the use of this authorization.

(*Id.* (brackets in original).)

Weathers's affidavit states that "it was obvious to [him] that [the defendant] would have no access to the records absent proper Authorization." (*Id.*) Thus, Weathers "anticipated" that the defendant would obtain a complete copy of the record and provide a copy to the plaintiff.

(*Id.*)  The defendant did not furnish any medical records to the plaintiff.

According to Weathers, Dr. David McCord, the surgeon who subsequently treated the plaintiff, believes that the plaintiff was the victim of medical malpractice.  (*Id.* ¶ 4.)  Dr. McCord, however, "want[ed] to review the entire chart before providing a written report about the malpractice and the harms resulting therefrom" (*id.*), which prevented the plaintiff from filing a certificate of good faith.

Concurrently with her response to the defendant's Motion to Dismiss, the plaintiff has filed a First Amended Complaint attaching a certificate of good faith.[5]  (Docket No. 10.)  The certificate states that Dr. McCord, "based on the information available from the medical records reviewed," believes that the plaintiff has a good-faith basis for her suit.  (*Id.* at 9.)  It further states that the certificate "is conditioned upon the fact that Dr. McCord asked to review the entire chart before providing a written report."  (*Id.*)  Also attached is a letter from Dr. McCord, confirming that he believes that there is a basis for a malpractice action but stating that, before he provides a written report, he "believe[s] it is necessary to review the entire chart."  (*Id.* at 11.)  The letter states that Weathers "probably remember[s] when [Dr. McCord] explained this all to [him] on December 9, 2010," the day before the plaintiff filed her Complaint.  (*Id.*)  The letter further states that, at that time, Weathers told McCord that Weathers "would provide a copy of the chart when [he] received it from Dr. Eskioglu."  (*Id.*)

The plaintiff argues that, under section 122(a) and (c), she was excused from filing the

---

[5] Aside from the addition of the certificate of good faith, the First Amended Complaint is substantively identical to the initial Complaint.  The defendant has filed a Motion to Dismiss First Amended Complaint (Docket No. 13) on the same grounds as his initial motion.

certificate with her initial Complaint because the defendant failed to provide copies of the Vanderbilt medical records, as she requested. (Docket No. 7 at 2.) In addressing the parties' arguments, the court must construe and apply sections 121 and 122 of the Act. The Tennessee Supreme Court recently synthesized its rules regarding statutory interpretation:

> In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language. It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources.

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009) (citations and quotation marks omitted).

The court finds that both the plain text and the purpose of the Medical Malpractice Act indicate that the plaintiff was excused from filing a certificate of good faith with her Complaint. Section 122(a) excuses a plaintiff's failure to file a certificate if she can show "that the failure was due to the failure of the [defendant] to timely provide copies of the [plaintiff's] records as provided in § 29-26-121." Tenn. Code Ann. § 29-26-122(a). Section 121, in turn, entitles "all parties" to a malpractice action "to obtain complete copies of the [plaintiff's] medical records from any [named defendant]." *Id.* § 29-26-121(d). To obtain such records, the plaintiff need only send "a legally authorized written request" to the defendant. *Id.*

Here, the notice and the authorization that the plaintiff sent to Dr. Eskioglu can be reasonably construed as a written request for the plaintiff's complete medical file. The notice explicitly stated that the purpose of the HIPAA authorization was to allow the defendant to

7

obtain the plaintiff's "complete medical records" from Vanderbilt (Docket No. 7, Ex. 1 ¶ 3), and the authorization explicitly requested that the defendant provide copies of all records he obtained (*id.* at 4). The clear implication was that the plaintiff desired a copy of her complete Vanderbilt medical records. The defendant does not argue that he was unable to discern that the plaintiff was requesting her complete medical file.[6]

Furthermore, Weathers's affidavit sufficiently shows that the failure to submit a certificate of good faith was due to the defendant's failure to provide the plaintiff with a copy of her complete medical records.[7] As it stands, the plaintiff has "limited records of Dr. Eskioglu's

---

[6] The defendant points out that the plaintiff's HIPAA authorization only requested medical records that he obtained "pursuant to [the] authorization." (Docket No. 7, Ex. 1 at 4.) The defendant argues that he did not require the authorization to obtain the plaintiff's records. (Docket No. 11 at 4-5.) He claims that Vanderbilt, as his former employer, is responsible for his defense and indemnification and that HIPAA permits entities to disclose patient information for "healthcare operations," which are defined to include "legal services." (*Id.* at 4 (citing 45 C.F.R. §§ 164.501, 164.506).) Thus, the defendant argues, he did not obtain any records "pursuant to [the] authorization," and he was not obligated to produce any records to the plaintiff.

    This argument suggests that the defendant has, in fact, received the plaintiff's medical records from Vanderbilt. Notably, he has submitted no evidence to support his assertion that Vanderbilt is obligated to defend or indemnify him.

    Ultimately, the court need not address the merit of the defendant's interpretation of the relevant HIPAA regulations. There was no way for the plaintiff to know the specifics of the relationship between the defendant and Vanderbilt. It is enough that the plaintiff reasonably believed that the defendant, who is no longer affiliated with Vanderbilt, would require the HIPAA authorization to obtain her medical records. The notice and the authorization, together, made it clear that the plaintiff sought a copy of her complete medical records. This was sufficient to constitute a "request" and to trigger a duty to produce such records.

[7] The defendant makes much of the fact that, even though the defendant has not yet produced any records, the plaintiff has filed a certificate of good faith with her First Amended Complaint. He argues that this shows that, all along, the plaintiff was capable of filing a certificate. (Docket No. 11 at 3, 5.)

    But the current certificate of good faith does not actually certify that Dr. McCord has provided the plaintiff with a written statement, as required by the Medical Malpractice Act. Tenn. Code Ann. § 29-26-122(a)(1), (2). Instead, it states that Dr. McCord will not provide a

8

treatment." (*Id.* ¶ 3.) Weathers's affidavit clearly states that, had the defendant produced a copy of the plaintiff's medical file, Dr. McCord would have provided the plaintiff with a written report stating that she has a good-faith basis for her malpractice action.[8] (*Id.* ¶ 4.) This is confirmed by the letter from Dr. McCord attached to the First Amended Complaint. (Docket No. 10 at 11.) Thus, the plaintiff was excused from complying with the certificate requirement.[9]

Although the plain text of the Medical Malpractice Act compels this conclusion, the court notes that this outcome is consistent with the purpose of the statute. There is little case law explaining the purpose of the 2008 amendments to the Act, but *Jenkins v. Marvel*, 683 F. Supp. 2d 626 (E.D. Tenn. 2010), contains a relatively in-depth discussion of the Tennessee legislature's intent. *Jenkins* looked to a 2007 Tennessee Senate Republican Caucus newsletter,

---

written statement until he can review the plaintiff's complete medical records.

[8] The defendant argues that Vanderbilt's records were equally accessible to the plaintiff and that she could have simply requested them directly from Vanderbilt. (Docket No. 11 at 5.) On four occasions between May 2009 and June 2010, the plaintiff, or her counsel, requested specific portions of her medical records directly from Vanderbilt. (Docket No. 12 ¶¶ 5-8.) In his affidavit, Weathers does not explain why he never simply requested the plaintiff's complete medical records from Vanderbilt. Admittedly, it appears that Vanderbilt would have cooperated.

Nevertheless, it appears to the court that Weathers must have held a good-faith belief that the defendant would enjoy better access to the plaintiff's records or would somehow have an easier time obtaining them. Nothing indicates that Weathers was acting in bad faith or employing procedural machinations to purposely delay the filing of the certificate of good faith. Indeed, before the Complaint was filed, the plaintiff had already consulted with a doctor who was willing to opine that she had suffered malpractice. There was no reason, then, for Weathers to improperly delay the filing of the certificate.

[9] Alternatively, a court may extend a plaintiff's time for filing a certificate of good faith for "good cause shown." Tenn. Code Ann. § 29-26-122(c). Because the plaintiff actually consulted with an expert before filing her suit, and because the plaintiff was waiting in good faith for the defendant to produce her medical records, the court finds that the plaintiff has shown good cause for an extension.

9

which stated that "'[t]he [amended Act] is designed to reduce the number of frivolous lawsuits filed in Tennessee each year . . . by requiring early evaluation and streamlined disclosure of medical records.'" *Id.* at 639; *see also Howell v. Claiborne & Hughes Health Ctr.*, 2010 Tenn. App. LEXIS 400, at *42-46, 48-49 (Tenn. Ct. App. June 24, 2010) (citing and adopting *Jenkins*'s discussion of the Act's purpose). *Jenkins* also examined cases discussing Texas's similar statutory scheme and concluded that Tennessee's Act was intended "to provide notice to potential parties . . . to facilitate early resolution of cases through settlement" and "to dispose of frivolous suits before any party incurred substantial litigation expenses." 683 F. Supp. 2d at 639.

Here, the plaintiff did, in fact, consult with a doctor before filing her suit to make sure that she had a good-faith basis for maintaining the action. Dr. McCord's letter makes this clear. (*See* Docket No. 10 at 11.) The letter also makes it clear that, based on the records possessed by the plaintiff, Dr. McCord "believe[s] there is a basis for a medical malpractice case against Dr. Eskioglu" and believes that "there is strong evidence of malpractice." (*Id.*) Thus, the plaintiff's suit is not the type of frivolous action that the Medical Malpractice Act seeks to prevent. Allowing the plaintiff's action to go forward, despite her failure to file a timely certificate of good faith, is not inconsistent with the overarching purpose of the Act.

Accordingly, the court will not dismiss the plaintiff's malpractice claims.[10] Instead, the

---

[10] Even if the Act required dismissal of the plaintiff's malpractice claims, at least a portion of her intentional misrepresentation claim would go forward. Regardless of whether a plaintiff has filed a certificate of good faith, the plaintiff's claims survive to the extent that they do not require expert testimony. *Barnett v. Elite Sports Medicine*, No. M2010-00619-COA-R3-CV, 2010 Tenn. App. LEXIS 785, at *16-18 (Tenn. Ct. App. Dec. 17, 2010).

Here, the plaintiff's misrepresentation claim is largely premised on the defendant's

10

court will order the defendant to produce the plaintiff's complete medical records, after which the plaintiff may file a revised certificate of good faith.

## **CONCLUSION**

For all of the reasons discussed herein, the defendant's Motion to Dismiss will be denied.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

allegedly false statement that he was experienced in the type of surgery that he recommended to the plaintiff. (*See* Docket No. 1, ¶¶ 33-40.) The plaintiff alleges that, absent this misrepresentation, she would not have consented to the surgery. (*Id.* ¶ 38.) The main inquiries, then, are whether the defendant misstated his prior experience and how this affected the plaintiff's decision. Because these issues are within the province of a lay jury, this aspect of the misrepresentation claim would survive. *Barnett*, 2010 Tenn. App. LEXIS 785, at *16-18.